UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03CV129

ROSE S.  POTEAT,                          )
                    Plaintiff,            )
                                          )
v.                                        )
                                          )        ORDER AND MEMORANDUM
PSC AUTOMOTIVE GROUP, INC                 )
d/b/a Honda Cars of Monroe,               )
                    Defendant.            )
                                          )

        In this civil action, Plaintiff Rose Poteat contends that her former employer, Defendant

PSC Automotive Group, Inc., discriminated against her because of her sex and age when it

reassigned her as the Finance Manager of the dealership to a lower paying position, which she

contends was designed to lead to her termination, and by paying her less than her male

counterpart.  The plaintiff now seeks monetary and punitive relief pursuant to the Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a), and North Carolina common law.

Jurisdiction is present. 28 U.S.C. §§ 1331, 1367.

        This case presently is before the Court on the defendant's motion for summary judgment.

The Court concludes that the plaintiff has not proposed facts that,  even in a light most favorable

to her, would allow a jury to draw a reasonable inference either that the defendant removed her

from her position as finance manager or subsequently paid her less than her male counterpart for

impermissible reasons, or that the conditions following her reassignment were deliberate or

objectively intolerable.   The Court therefore grants the defendant's motion for summary

judgment in its entirety.  The reasons for its decision follow, beginning with the following facts

that the Court finds to be material and undisputed.

1

FINDINGS OF FACT

Rose Poteat, age 58, was employed as a salesperson[1] for Honda Cars of Monroe when, in July of 2001, PSC Automotive Group purchased the dealership. PSC quickly restructured the dealership's internal management to include sales and finance managers. Newly hired General Manager Rick Piland then promoted Ed Nordyke to Used Car Manager, Darrel Beachum to the F&I ("Finance and Insurance") Manager, and David Helms to General Sales Manager. All three former salesmen were in their forties. When Beachum left the dealership in October, Piland promoted Poteat to F&I Manager.

The dealership suffered financial losses during the subsequent months. In February 2002, at the behest of Executive General Manager Conley Byrnes, Piland made changes. He returned Nordyke to the sales floor, and fired the General Sales Manager, the Parts Manager, and the Service Manager. Piland also removed Poteat as the Finance Manager and replaced her with Kelly Phillips, a thirty-three year-old male. He then offered Poteat an opportunity to start a Business Development Center ("BDC") for the dealership. This brand new position did not have a precise job description or pay plan. Piland told Poteat that until he decided on a pay plan, she would receive the same salary that she had as the F&I manager.[2] Poteat accepted, and spent the next three weeks at City Chevrolet training to set up the BDC. While Poteat received her weekly draws, she never got her monthly commission check. She, however, did not bring this to Piland's attention. Nor did she have any discussion with him about her pay plan. Dissatisfied,

[1] The parties dispute over which title – "sales manager" or "sales associate" – appropriately describes Poteat's job prior to PSC's purchase of the dealership. (Honda Cars previously did not have supervising mangers; sales associates were individually responsible for all aspects of the sale, including financing.) The distinction is irrelevant to the Court's decision in the instant case, but for the sake of clarity, the Court will use the term "salesperson" to identify the positions held by the plaintiff and others before they were promoted.

[2] As the F&I manager, Poteat had received a monthly salary of $3,300.00 to $3,700.00, which consisted of $300 weekly draws, plus an end-of-the-month check for the sum of her commissions minus the draws already paid.

Poteat asked Piland whether any other positions were available. When told the only available position was back on the sales floor, she accepted. Ed Nordyke took over the BDC position and eventually received a pay plan that included commissions from internet sales. Poteat's production on the sales floor was low. In early April 2002, she was told that her sales numbers were unacceptable, paid that week's draw, and then fired.

## PLAINTIFF'S COMPLAINT

The plaintiff asserts that her Title VII claim is brought under the theory of either "sex" or "sex plus" discrimination.[3] Specifically, the plaintiff alleges that the defendant discriminated against her when it removed her from the F&I manager position, despite her "excellent numbers," and replaced her with a younger, less qualified male. She also alleges that the defendant deliberately failed to provide her promised salary and pay plan for the BDC position, resulting in her constructive discharge, and that the defendant further discriminated against her when it provided Ed Nordyke, who replaced Poteat in the BDC position, with a pay plan that included a salary and commission from internet sales. Each of these claims is reasonably related to her initial discrimination charge. Equal Employment Opportunity Comm'n v. General Elec. Co., 532 F.2d 359, 363 (4th Cir. 1976).

## SUMMARY JUDGMENT

Summary judgment is appropriate where the Court determines that there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law.

---

[3] The plaintiff originally alleged violations of both Title VII and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34. She has since dropped her ADEA claims. See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, page 13. (Doc. No. 41).

Fed. R. Civ. P. 56(c). In making that determination, the Court must be certain the record does not reveal any genuine material factual dispute, resolving all ambiguities and drawing all legitimate factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250,106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This is especially true in employment discrimination cases where determinations of motive and causation are critical. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996). Measured by these standards, summary judgment is appropriate as to each of the plaintiff's claims.


ANALYSIS

There (still) are two avenues of proof that a plaintiff may use to avoid summary judgment on her Title VII claims. Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc). A plaintiff may proceed under ordinary principles of proof and offer legally sufficient direct or circumstantial evidence that discrimination motivated her employer's adverse employment decision. The employee need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor. Id. (citations omitted). Alternatively, the employee may proceed under the familiar McDonnell Douglas "pretext" framework under which the employee, after raising an inference of discrimination through her prima facie case, must demonstrate that her employer's "proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Hill, 354 F.3d at 285. Although the burden of production shifts under this method, the burden of persuasion rests at all times on the plaintiff. Even when a plaintiff demonstrates a prima facie case and pretext, the claim should not be submitted to a jury if there

is evidence that precludes a finding of discrimination. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In this instant case, the plaintiff has not offered sufficient direct or circumstantial evidence that suggests a discriminatory reason for her employer's decision. That a co-worker opined that Poteat was demoted because PSC wanted someone "younger with testicles," is insufficient. <u>Tinsley v. First Union Nat. Bank</u>, 155 F.3d 435, 444-45 (4th Cir. 1998). Therefore, the plaintiff must proceed under the <u>McDonnell Douglas</u> "pretext" framework on each of her claims.

Although her initial burden is not designed to be onerous, in order to make her prima face case of discrimination, the plaintiff must show by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate expectations; and (ordinarily) (4) she was replaced by a member outside the protected class, or similarly situated employees outside the protected class were treated more favorably. <u>Hill</u>, 354 F.3d at 285; <u>cf.</u> <u>Miles v. Dell</u>, 429 F.3d 480, 486-489 (4th Cir. 2005) (holding that, in certain cases that call for an exception, a plaintiff can show a prima facie Title VII discrimination claim without establishing the fourth prong).

1.      Removal from Finance Manager Position

The Court concludes that the plaintiff has satisfied the first, second and fourth elements of her prima facie case. In particular, because the BDC position was a brand new position that had significantly different responsibilities and did not have a pay plan, her reassignment suffices to show an adverse employment action.[4] <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761,

---

[4]The plaintiff contends that her reassignment satisfied the second prong. However,"[a]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment. <u>James v. Booz-Allen & Hamilton, inc.</u>, 368 F.3d 371, 376 (4th Cir. 2004).

118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). At issue is the plaintiff's ability to demonstrate that her performance was meeting her employer's legitimate expectations. The Court finds that she has not.

A plaintiff's self-assessment of her job performance cannot establish a genuine issue as to whether she was meeting her employer's expectations. Evans, 80 F.3d at 960-61. Among the evidence that suffices to show that her employer found her job performance satisfactory are, *inter alia*, recent positive job evaluations, testimony of a superior, or expert testimony about her performance. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Her employer may counter with evidence defining the expectations as well as evidence that the employee was not meeting those expectations. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515-516 (4th Cir. 2006).

Poteat contends that she had two excellent months when she was removed from the F&I Manager position, specifically offering as proof her per car average of over $700 on used cars in January 2002, and her 58% penetration rate in February. She also contends that her "bonuses" further demonstrate her "excellent" performance. According to the defendant, however, F&I Managers are expected to produce a per car average of $1,000 on used cars, and achieve a 65% penetration rate. Furthermore, her "bonuses" were the result of an incentive plan under which her per car average would have to exceed only $500 before she was eligible for a "bonus," a number short of the expected averages. Thus, the plaintiff's unsubstantiated assertions that her numbers were "excellent" are not sufficient to establish a genuine issue that she was performing satisfactorily. King, 328 F.3d at 149. Given the absence of other evidence in this case, neither her employer's occasional complimentary statements, nor the mere absence of negative feedback from her employer demonstrate that the plaintiff was meeting all of her employer's legitimate performance expectations.

However, assuming arguendo that the plaintiff has made out a prima facie case of discrimination, the Court finds that plaintiff has failed to show that the proffered non-discriminatory reason for removing Poteat from the F&I manager position – the dealership had lost money and Piland was not satisfied with the performance of the finance department – was pretextual. This is particularly true given the strong inference of non-discrimination that exists because Piland is the same person who both promoted and removed Poteat. Proud v. Stone, 945 F.2d 796 (4th Cir. 1991).

The plaintiff contends that she had rebutted the defendant's proffered reasons because its reason for her removal – "her return rate from AHF" – is false, and because her individual performance did not warrant her removal. Contrary to the plaintiff's assertions, while her return rate is briefly mentioned in its correspondences with the EEOC, the defendant never characterized it as the basis for Poteat's removal. Rather, the defendant states repeatedly the reasons were that the dealership had lost money and that Piland was not satisfied with the performance of the finance department.[5] The plaintiff has provided no evidence that either reason is false or lacking factual basis. Nor can the plaintiff show pretext by arguing that "[she] was making her numbers and making bonus [and] [t]he male managers . . . were not." The Court will not second-guess business decisions. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (courts must give employers the "latitude and autonomy to make business decisions,"

---

[5]See Defendant's October 11, 2002 Letter to EEOC, page 3 ("Additionally, under Ms. Poteat's tenure, after the first month, the total F&I income significantly decreased two months in a row. Ultimately . . . the Company was not satisfied with the status of the department. Although she was making a relatively nice salary for herself, Ms. Poteat was not making any money for the Company. . . . Mr. Piland was forced to make a change in the F&I office."); Id. at 5 ("[T]he Company was still dissatisfied with the profitability of the F&I department . . . ."); Id. at 6 ("[T]he Company was dissatisfied with the profitability of the department under Ms. Poteat's direction."); and see Defendant's November 4, 2002 Letter to EEOC, page 3 ("When the Company lost $50,000 over the three months that Poteat and the other mangers held their positions, Mr. Piland was forced to make some changes"); Id. at 4-5 ("The Company lost $50,000 during the three moths that Poteat held that position. As such, it was necessary for changes to be made, and one of them was to remove Ms. Poteat from the F&I Manager position.").

and may not require businesses "to use only such personnel policies which the Court deems to be fair or reasonable.").

2.    Constructive Discharge

To establish a prima facie case of discrimination by constructive discharge, the plaintiff must demonstrate, *inter alia*, that her employer deliberately rendered working conditions intolerable and thereby forced her to quit. See EEOC v. Clay Printing Co., 955 F.2d 936, 944, 945 (4th Cir. 1992). 'Deliberateness' exists only if the actions complained of were specifically intended by the employer as an effort to force the plaintiff to quit. Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) (citations omitted). 'Intolerability' is assessed by an objective standard of whether a reasonable person in the employee's position would have felt compelled to resign." Id.

In the instant case, Poteat's failure to discuss with Piland either her missing commission check or her pay plan precludes her claim of constructive discharge.  Part of an employee's obligation to be reasonable "is an obligation not to assume the worst and not to jump to conclusions too fast." Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987). An employee who resigns without informing her employer of the situation, or giving her employer a reasonable chance to remedy the situation is not constructively discharged. West v. Marion Merrell Dow, Inc., 54 F.3d 493, 498 (8th Cir. 1995).

3.    Pay disparity

The Court concludes that the plaintiff has satisfied all four elements of her prima facie case for disparity in compensation. See White v. BFI Waste Servs., LLC, 375 F. 3d 288, 295 (4th Cir. 2004). In particular, the Court finds that Nordyke obtained a pay plan that included commissions from internet sales, where as Poteat did not.  As such, the burden then shifts to the

defendant to offer a legitimate, nondiscriminatory reason for the challenged employment. Available to the defendant are the four affirmative defenses incorporated from the Equal Pay Act: (1) the decisions were made pursuant to a seniority system; (2) the decisions were made based on a merit system; (3) the decisions were made based on a quantity or quality of production; or (4) the decisions were based on factors other than sex. 29 U.S.C. § 206(d)(1); see 42 U.S.C. § 2000e-2(h).

Here, the defendant convincingly establishes that the difference between Nordyke and Poteat's salary was "based on factors other than sex." The defendant alleges that the BDC was a brand new position for which no pay plan had been created. While Poteat resigned from the position as soon as she returned from training, without having any discussion with Piland about a pay plan, Nordyke, through his own efforts, negotiated his pay plan that included commissions from internet sales sometime after the BDC department was up and running. The plaintiff does not genuinely dispute this reason, and her unsubstantiated assertions that Nordyke immediately received a pay plan are not sufficient to show pretext. See DeJarnette, 133 F.3d at 299 (plaintiff must offer evidence specifically refuting facts that support the employer's proffered nondiscriminatory reasons) (citations omitted). Likewise, her subjective perceptions that internet sales would not have been offered to her is irrelevant.

## STATE LAW CLAIMS

The plaintiff alleges that the defendant's alleged discriminatory actions are a violation of North Carolina public policy. She relies on the North Carolina Equal Employment Practice Act, N.C. Gen.Stat. § 143-422.2, as the source of North Carolina's public policy against age or sex discrimination. Having failed to establish facts to support her claims under Title VII that the

9

defendant discriminated against her due to her sex and/or age, the plaintiff's wrongful discharge claim is dismissed. See Jones v. Southcorr, LLC, 324 F.Supp.2d 765, 783 (M.D.N.C. 2004); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (equating Title VII and NCEEPA standards).

CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED** that Defendant's motion for Summary Judgment be **GRANTED** in its entirety and Plaintiff's case be **DISMISSED**.

Signed: September 29, 2006

Robert J. Conrad, Jr.
Chief United States District Judge